2-3-1959 Jose Vincente Penafiel-Peralta v. Merrick B. Garland 3 minutes of rebuttal Petitioners seek review of the agency's decision which upheld the immigration judge's denial of their application for asylum. The Board's decision was rooted in just two issues that it found dispositive of petitioners' eligibility for relief, the first being nexus to a protected ground and the second being that petitioners failed to establish that the government of Ecuador was unwilling or unable to protect them from the persecution fear. Neither of these decisions were supported by substantial evidence. As such, petitioners are seeking that you grant this petition and remand to the Board. Addressing the issue of nexus, substantial evidence established that it was the familial membership of petitioners that was at root of the persecution and the threats that they faced. It's clear that this is rooted in a dispute over land. However, the petitioner's familial membership cannot be disentangled from that non-protected motivation. The immigration judge's own language at AR-57 even notes that. He calls it a family land dispute. Further, at numerous points in the record, it's shown, petitioners have shown, that it was this family membership that brought about the pure persecutory conduct. So a petitioner noted in his asylum application that his sister, who had sold him the disputed land, had bad intentions towards him. He included a declaration of his mother, who is also the mother of the persecutor, Sandra, who stated that Sandra hated the co-petitioner, the elite petitioner's wife. Another declaration that was included from a neighbor stated that he had witnessed the constant problems that the petitioner had had with his sister. That's AR-268. Now, beyond just these motivations, it's the Pena-Peralta family's adverse claim to the disputed land that brings about the persecutory conduct. There's no dispute that one of the motivations is to have them vacate the land. However, it's the family, much like in Peneda-Maldonado, where the family is seen as having this debt towards the persecutors. This family has an adverse claim, and that claim must be extinguished to achieve those ends. So it cannot be disentangled. Now the ---- I'm having sort of the same problem that I had with the last case. Are you saying that there is no court system there that could disentangle this? Well, the court system would go more towards a willingness or ability to protect the respondents from harm as opposed to the motivation itself. And the record indicates that while this property motivation exists, it's the family can't be disentangled from it because of their adverse claim towards that of the persecutors. So I would note ---- If a court system said that they were the valid owners, even if there was this animosity towards them as a family, the dispute would be resolved through the court system. Now in relation to that, this court should be looking at the full context. So the credible testimony as well as the declaration state that the property was bought and paid for by the Penifel-Peralta family. They lived there for a period of four to six years and developed a home that was not previously on the property. Now they also noted ---- And the reason they couldn't go to court was what? They lacked the financial means, and they testified to that fact, that they were unable to hire a lawyer because they lacked the financial means. They also made numerous attempts to obtain title from the sister who refused to do so, and refused to do so along with threats of violence if they continued to pursue their claim on this land, that they would be met with violence. That was also, you know, those threats were also made by the ---- Well, I think that that is conflating a little bit the issues of nexus and whether the government of Ecuador is willing or able. Under these circumstances, and matter of CGT, which discusses that a failure to report is not necessarily fatal to a claim of unwillingness or unability, matter of CGT requires that reviewing courts look at the full circumstances. And the credible testimony here is that that title, that claim, could not be obtained for two reasons. One, because they lacked the financial means, and two ---- Is there something in the country conditions report that says that had they had the financial means, that the civil system in Ecuador would not address this kind of dispute? I believe it does, there is one reference that says that, sorry, just give me a moment. I'm just not quite understanding how lack of access to a valid legal system, if the country conditions don't suggest otherwise, means that it transforms something rooted in poverty into something that becomes a matter of asylum. Again, I think that that relates solely to the issue of the willingness or ability, and was it reasonable for them not to seek out that legal redress. So as to nexus ---- And why, other than poverty, why wasn't it? So that also goes, CGT provides that a failure to report, looking at the full context, requires two reasons where it can be found to overcome that. But using the failure to report has to do failure to report threats, as opposed to failure to take advantage of a civil legal system. Yes, however, I think that the threats are directly tied to them exercising this family's claim to the property. And I would note that where there is a legitimate fear of harm, the failure to report or exercise that can't be fatal, at least to the willingness or ability. Let me ask you one other question. In his opinion, or her opinion, the ALJ, the IJ, I mean, he weighs the evidence and then he says he concludes that the threats, there's insufficient evidence that these threats were on account of any of the particular social groups. So that's, he's weighing the evidence. How can that be overturned? The same reasoning that this Court used in Pineda-Maldonado in the fact that it can't be disentangled. The threats, yes, are clearly to obtain this land. But that land is tied to this nuclear family's, their membership, because members of this family. But he made a finding it's not tied to the family. So you're saying that's obviously clearly erroneous. Yes, exactly. It was not supported by substantial evidence in their testimony as well as the declarations that were included that all indicated that the community at large recognized and knew that this family had paid for the land and had lived there, built a home on previously undeveloped land. So that the motivations for the property can't be disentangled from the familial membership because that family has established that that's their home. Is your argument on appeal regarding the nexus issue focused solely on the failure of the IJ and the BIA to conduct the mixed motive analysis? Or are you also arguing that the record here compels a contrary conclusion? Both. Yes. So I believe that, I think the fact that the immigration judge acknowledges that there is a family aspect, I think they do fail to engage in a proper mixed motive analysis. Even if by language they say, you know, I considered this. But that also goes to the clear error. And I think that substantial evidence here compelled the finding that this nuclear family, you can't disentangle their claim to this land from their familial membership. And that's under Peneda-Maldonado would be clear error. And can I just circle back to the unwilling, unable. So the government argued that the country-conditioned report provided generalized evidence of corruption and poverty. Are those reports enough to prove that reporting the threats would have been futile or dangerous? And is there anything else in the record that supports that? So I believe in relation to that, if I can just get the case alone, a speculative belief that, you know, such reports would be futile is not enough. However, there is more than just a speculative belief here. There is ample country-conditioned records that speak to the fact that the judiciary, which this court noted would be one of the legal avenues, is notoriously corrupt. In addition to that, there's several declarations that I already noted that also speak to one of the persecutors, Luis Barroso, the fact that not only was he a military member and had connections to the local authorities, but he was also threatening violence, threatening death. And for those reasons, the record, despite the fact that they may be speculating, you know, in some regard to the futility of it since they did not seek, there is ample evidence to support that had they attempted to go through the court systems or go to the police, that it would be futile as well as dangerous. And for that reason, they did establish that the Ecuadorian government was unwilling and unable to protect them. Thank you. Thank you, counsel, at this time. Counsel, for the respondent, please introduce yourself on the record to begin. Good morning, Your Honors. May it please the Court. Allison Freyer for the Attorney General. In this case, petitioner must prevail on two separate issues in order to win on his petition for review, both nexus and whether the Ecuadorian government would be unable or unwilling to control his alleged persecutors. Both of those issues are subject to substantial evidence review at this stage. Clear error review was used by the board, but this Court must use substantial evidence review. As to nexus, there is simply no evidence linking the family membership to the land dispute. Petitioner keeps repeating that the family can't be disentangled from the land dispute, but he hasn't shown how or why. Petitioner bought the land from his sister. He didn't get it as a result of his family relationship. He bought the land. Then he lives there. He builds his home. Everyone knows he lives there, just like anyone else would live on that land. And then the sister, Sandra, wants to sell it to someone else for more money, and she fraudulently does so. Nothing about the family relationship motivates Sandra to sell the land to someone else. She just wants more money and doesn't care how she gets it. And Luis Barroso, the new owner of the land, bought the land from Sandra, and he wants Petitioner off the land because he just bought it and he didn't ask for a tenant. So nothing about the family relationship motivates Mr. Barroso either. It was solely a land dispute in that Sandra double sold the land. There may be some sort of civil claim against Sandra for sure, because by the time she's selling the land to Mr. Barroso, she's selling land she no longer legally owns, but because she didn't ever give title to Petitioner, they didn't do anything about that. There's a lot of evidence in the record that there's vague and generalized corruption in Ecuador, but there's very little about the civil court system in particular. The country conditions report from the Department of State focuses on the criminal system, focuses on the fate of anti-government protesters, things like that. There's very little about the civilian system, the civil system. And in any event, this court has repeatedly held, and this is getting more into the unable or unwilling, but this court has repeatedly held that a petitioner's subjective belief that reporting would be dangerous or futile, even when coupled with generalized corruption in the country of nationality, is not sufficient to compel the conclusion that the authorities would be unable or unwilling to control the alleged persecutor. That's Guaman Loja at 707 F3rd 119 and Morales Morales at 857 F3rd 130. Just to circle back to those reports that you've mentioned, so Petitioner cited reports that the police, the government, the judicial system are corrupt and offer no protection. So, and I've heard you say many of those reports are focused on the criminal system rather than the civil system. Are there any other reasons why we shouldn't rely on those reports? Yes, absolutely. So first of all, Petitioner's actual testimony was that he did not go to the police because he thought the police would side with Barroso in the land dispute because Barroso had the title to the land. That's not corruption. That's the rule of law. If you have the title to the land, you have a right to expect that you're going to be able to enjoy the land, even if there may be a civil claim for fraud out there somewhere. So that's not corruption. So it's not even sure, it's not clear how the evidence of corruption helps Petitioner in this case exactly. He also mentioned that he thought Barroso might get mad. He didn't say exactly what would happen once that happened, but he did clearly fear angering Barroso. And it seems that Mr. Barroso spent some time in the military in Ecuador in the past. Petitioner testified that he realized that Mr. Barroso had military service in his past because he saw pictures of Mr. Barroso on Facebook in uniform. So we don't know when he served. We don't know how long he served. We don't know at what rank. He imagines that Mr. Barroso has all kinds of power and heft, and we don't know that that's true. That subjective belief alone may be honestly subjectively held. Petitioner testified credibly, but that is not enough to meet his burden of proof, that the record would compel the conclusion that this one person. What happened with Barroso, if you look at it, it's kind of like what happens here in the States. It's similar to like a bona fide purchaser, and the petitioner doesn't like that result, but then he ties in the military and all these other things. But we agree, it's a bona fide purchase, literally, the equivalent. Correct. And it's not clear what, if anything, Mr. Barroso knows about the previous sale. So I don't, it's not clear that Barroso knows that he is attempting to kick off the land someone with a decent claim. We just know he wants Petitioner gone. Importantly, according to Petitioner's testimony, the threats from his sister began, it seems they didn't like each other before, but the threats, the real threats, the crux of the case began when she wanted to sell the land. And then after Petitioner and his family leave the land and go live at Petitioner's mother's house, they never hear from the sister or Mr. Barroso again. So the timing of the threats and the content of the threats are always focused exactly on the land. There's no evidence that if Petitioner was not a family member and instead was just a neighbor who had bought the land, didn't get the title and was living there, and then Sondra decided to make a quick buck some other way, it's by selling it again. There's no evidence that he would have been treated any differently had he been a friend or a neighbor. He was treated shabbily, absolutely, but because he was standing in the way of Sondra's greedy scheme to sell the land twice. So if there are no other questions. No questions. Thank you. And we have three minutes for rebuttal. Counsel Meyer. Please do introduce yourself back on the record to begin. Christian Meyer for the Petitioner's. So I would, this court has asked about whether there's anything relating to the property rights and corruption within the court system. So, yes, there is. At AR 231, widespread corruption by both public officials and private sector actors weaken the protection of property rights. So that relates directly to their willingness and ability to enforce those rights. I mean, that's such a generalized statement, though. How is that specifically applicable to what's going on here? Well, I think it. And how do we know that this particular petitioner would have had a bad result had she pursued her property rights in the court system? So, again, I think that that relates to the ability to get redressed civilly. Now, the threats are criminal. So going to the police, the courts are required to consider the reasonableness of the failure to go forward. It was, under these circumstances, impossible for them to go forward because there was a seemingly valid claim against them. So going to the police and saying that we're being threatened over this is likely to be futile. Now, additionally, it's not just a fear. But it should have been futile. As your sister counselor said, it should have been futile if they had legal papers saying that they had title. Yes, but that goes to the reasonableness of their failure to report. So the fact that there is no valid recourse that would support that. They have civil recourse. Yes, but that also is underpinning the threats themselves. So the fact them going forward and saying we're being threatened over this. How do we know that that's underpinning the threats other than they just want them off the property? Because he has a qualified purchaser for value. Because they say exactly, the petitioner testified exactly to that, that they were being threatened for trying to exercise their claim on the land. Now, in terms of unwillingness and inability, this court needs to not just look at whether or not it would be futile to go and seek redress from the authorities. They need to look at whether or not it's dangerous. Now, it's not just petitioner's subjective belief. Looking at the supporting declarations, each one of those states that Luis Barroso was dangerous had threatened them and had made clear that he was happy to use violence to force them off the land. One of those declarations from Mr. Pozo Gomez specifically said he threatened to kill them in order to get them off the land. So the belief that going forward and trying to exercise this claim would be dangerous to them is entirely reasonable. And supported not just by the testimony, but by other declarations as well from people outside of the petitioner's family. Thank you. Any other questions? No, thank you. Okay, you're excused. Thank you. Thank you. Have a good day. Thank you, counsel. That concludes argument in this case.